UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOSHUA HATFIELD,

        Plaintiff,

v.                              Civil Action No. 15-14997

SUPERIOR COAL SERVICES, L.L.C.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

        Pending are plaintiff Joshua Hatfield's motion to remand, filed on November 18, 2015, and his motion to strike, filed on December 7, 2015.

### I. Background

        Plaintiff Hatfield was previously employed as a coal miner by defendant Superior Coal Services, L.L.C. ("Superior"). Compl. ¶ 5.  On August 22, 2015, Hatfield was moving a piece of machinery when a chain broke loose and injured him.  Id. ¶ 8. After taking a few days off, id. ¶ 9, Hatfield returned to work on August 28, id. ¶ 11.  The next day, Hatfield was told to loosen a part on some mining equipment.  Id. ¶ 12.  While he was doing so, the equipment was damaged.  Id. ¶ 13.  Soon thereafter, Hatfield was fired.  Id. ¶ 14.

On October 5, 2015, Hatfield filed a complaint in the Circuit Court of Boone County, West Virginia.  See id. at p. 1. Count 1 of the complaint alleges discriminatory discharge in violation of the West Virginia Workers' Compensation Act, W. Va. Code § 23-5A-1, which prohibits discrimination related to an employee's receipt of workers' compensation benefits.  Id. ¶¶ 16-22.  Counts 2 and 3 allege discriminatory and retaliatory discharge, respectively, based on plaintiff's August 22 injury, in violation of the West Virginia Human Rights Act, W. Va. Code § 5-11-9.  Id. ¶¶ 23-32.  Count 4 alleges common law wrongful termination, id. ¶¶ 33-37, and Count 5 alleges intentional infliction of emotional distress, id. ¶¶ 38-46.  Hatfield claims that because of his termination he "was caused to suffer, and will continue to suffer into the foreseeable future, injuries which include . . . loss of wages, loss of earning capacity, loss of ability to enjoy life, humiliation, embarrassment, annoyance, and inconvenience," id. at ¶ 15, as well as the loss of various, unspecified "income and benefits," id. at ¶¶ 22, 28, 32, 35.

On November 12, 2015, then-defendant Elite Coal Services, L.L.C. ("Elite"), removed the case to federal court, asserting that the case was properly removable because "it appears, on its face, to be related to an Employee Retirement

Income Security Act of 1974 [("ERISA")] [plan,] . . . plaintiff
having alleged he 'has lost and will continue to lose income and
benefits. . . .'"  Notice of Removal, pp. 1-2.  The same day,
Elite moved for summary judgment on the ground that it had been
wrongly named as a defendant.  The court denied Elite's motion
for summary judgment as moot on December 3, in view of an agreed
order entered on December 1 that substituted Superior -- the
present defendant -- for Elite.

On November 18, meanwhile, Hatfield moved to remand to
state court.  In Hatfield's motion to remand, he contends that
removal was improper because Superior has "failed to properly
identify a federal question" and "merely speculates that ERISA
is applicable because it wishe[s] to invoke the jurisdiction of
this [c]ourt."  According to Hatfield, "that speculation is
insufficient[.]"

## II.  Governing standard

When a defendant removes an action from state to
federal court, "federal removal jurisdiction exists if the
action is one 'of which the district courts of the United States
have original jurisdiction.'"  In re Blackwater Sec. Consulting,
LLC, 460 F.3d 576, 583 (4th Cir. 2006) (quoting 28 U.S.C. §
1441(a)).  Federal courts have original jurisdiction over
primarily two types of cases -- those involving "federal

3

questions," pursuant to 28 U.S.C. § 1331, and (2) those involving diversity of citizenship, pursuant to section 1332(a).

The removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  In cases removed from the state system, the court must "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction."  Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (citing Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 10 (1951)).  After doing so, and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

### III. Discussion

#### A.

As a preliminary matter, on November 25, 2015, then-defendant Elite filed a response in opposition to Hatfield's motion to remand.  After Hatfield filed a reply, Superior filed a surreply -- titled a "response" to the reply -- without having first received permission to do so from the court.  Hatfield moved to strike the surreply on that basis on December 7, 2015.

4

In Superior's response in opposition to the motion to strike, it claims that the surreply "provides vital information to oppose [Hatfield's] false assertion [in his reply] that . . . '[Hatfield] was never offered any type of benefits package through his employer.'" Def. Response to Strike, pp. 1-2 (<u>citing</u> Hatfield Reply, p. 4). The court treats Superior's response in opposition as including a motion for leave to file a surreply, and concludes, for good cause shown, that such motion should be granted. <u>See</u> L. R. Civ. P. 7.1(a)(7). Accordingly, the court will consider the surreply in reaching its ultimate decision below. In light of the foregoing, the court further concludes that Hatfield's motion to strike should be denied. Finally, certain portions of Superior's response in opposition to the motion to strike appear to constitute a request for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The court concludes that sanctions are unwarranted.

B.

1.

In the complaint, Hatfield claims, among other things, to have been deprived of various, unspecified "income and benefits." Compl. ¶¶ 22, 28, 32, 35. Although a request for recovery of lost income and benefits is not uncommon in complaints sounding in tort, Superior seizes upon Hatfield's use

5

of the word "benefits" to support its position that this case
involves an ERISA "plan." See Def. Response, pp. 1-2 (citing
Compl. ¶¶ 22, 28, 32, 35); Def. Surreply, pp. 3-4. According to
Superior, the benefits in question consist of a group health
insurance plan and prescription card, as well as a policy
providing for paid time off on specified holidays. See Def.
Surreply, pp. 1-4 (citing Surreply Exs. 1-3). Superior's own
evidence, however, shows that Hatfield specifically declined
medical benefits for himself and his family.

2.

ERISA prohibits employers from discharging, fining,
suspending, disciplining, or otherwise discriminating against
participants in or beneficiaries of employee "benefit plans" for
exercising or attempting to exercise their rights under such
plans. See 29 U.S.C. § 1140. ERISA's chief purposes are to
prevent the mismanagement of accumulated benefit funds and the
failure to pay benefits from such funds when due. Massachusetts
v. Morash, 490 U.S. 107, 112-13 (1989). To that end, ERISA
preempts "any and all State laws insofar as they may now or
hereafter relate to any benefit plan." 29 U.S.C. § 1144(a).

ERISA's definition of the term "benefit plan" includes
"employee welfare benefit plans," 29 U.S.C. § 1002(3), defined
in turn as "any plan, fund, or program" which is established or

6

maintained by an employer for the purpose of providing employees
with "medical . . . care in the event of sickness, accident,
disability, death, or unemployment to employees," or training
programs, apprenticeships, vacation benefits, and the like.  29
U.S.C. § 1002(1).  Although the definition is broad, not every
policy granting employees some putative benefit constitutes a
"benefit plan" for ERISA purposes.  Thus, a benefit whose
delivery requires no independent administrative infrastructure
usually does not constitute a "plan."  <u>Fort Halifax Packing Co.
v. Coyne</u>, 482 U.S. 1, 12 (1987) (holding that one-time severance
payment upon plant closing did not constitute an ERISA "plan"
because it did not require an ongoing administrative scheme).
Particularly relevant to the present case, neither does a policy
providing for ordinary vacation or holiday pay out of ordinary
assets.  <u>Morash</u>, 490 U.S. at 114-17.  Such perquisites are not
within ERISA's reach, and claims relating to them are generally
not preempted.

On the other hand, a benefits scheme that requires the
employer to organize and maintain some ongoing administrative
support system generally does constitute a "plan," <u>Elmore v.
Cone Mills Corp.</u>, 23 F.3d 855, 861 (4th Cir. 1994) (<u>en</u> <u>banc</u>), as
does one financed by a separate fund, kept and managed apart
from the employer's ordinary operating assets, <u>Cal. Hosp. Ass'n</u>

7

v. Henning, 770 F.2d 856, 861 (9th Cir. 1985) (observing that in the absence of requirement that vacation benefit fund be separately managed, "[a]ny employee claiming denial of vacation leave could sue his employer in federal court.  It is unlikely Congress intended to create burdens of this magnitude without evidence of need, and without comment.") (internal citations omitted), modified by 783 F.2d 946, cert. denied by 477 U.S. 904 (1986).

     Superior's assertion that this case involves an ERISA "plan," although emphatically expressed, is unsupported by the evidence presented.  To be sure, Hatfield was offered voluntary participation in a group health insurance plan, see Surreply, Ex. 1, as Superior claims.  On December 18, 2014, however -- seemingly the day the offer was made -- Hatfield signed a document in which he expressly waived and "declined medical coverage for [himself] and all family members," thereby rejecting the benefits offered.  Id.  Consequently, Hatfield was not a participant in the plan, and hence could not have been deprived of any "benefits" flowing from it, even if the scheme could, in the abstract, be considered an ERISA "plan."[1]  Miller

---

[1]  Similarly, although Hatfield was apparently offered a "prescription card" as part of the group insurance plan, see Surreply, pp. 2-3, there is no evidence that he received -- or, given his rejection of the plan, was entitled to -- such a card.  See Surreply, Ex. 2 (merely showing that Hatfield signed a document

v. Rite Aid Corp., 504 F.3d 1102, 1105-06 (9th Cir. 2007)
(participation in an ERISA benefit plan is a prerequisite to
ERISA preemption).  The mere offer of participation in a plan
cannot form the sole basis of ERISA preemption.

The only claimed benefit in which there is evidence of
Hatfield's participation is Superior's holiday pay policy.
According to evidence submitted by Superior, Hatfield
acknowledged receipt of a portion of Superior's company
handbook, which specified as follows:

> The following holidays are paid days off for full time
> employees: Independence Day, Memorial Day, Labor Day,
> Thanksgiving Day, Christmas Day.  . . .  You will be
> paid at your normal daily rate for holiday pay, (Eight
> hours -- 8 -- straight time only).

Surreply, Ex. 3 (further indicating that the handbook page
bearing the quoted language was signed by Hatfield on December
18, 2014).  Superior points to the holiday policy as evidence of
an ERISA plan.  See Def. Response, pp. 1-3 (citing Callison v.
Charleston Area Med. Ctr., Inc., 909 F. Supp. 391, 391-93 (S.D.
W. Va. 1995), which, however, involved a disability benefit plan
together with fringe benefits).  The court is not persuaded.

---

on December 18 indicating that he had been offered "health
insurance and a prescription card").

9

Although ERISA's broad definition of "employee benefit plan" includes fringe benefits such as vacation pay, see 29 U.S.C. § 1002, not every company policy offering paid time off is a "plan."  In Massachusetts v. Morash, 490 U.S. 107, the Supreme Court examined whether a company's policy of paying its discharged employees for their unused vacation time constituted a "benefits plan" for ERISA purposes.  Acknowledging the inclusion of the term "vacation benefits" in section 1002's definition, the Court concluded that the policy did not fall within ERISA's preemptive reach.  Id. at 114.  "Congress' primary concern [in enacting ERISA] was with the mismanagement [of benefit] funds . . . and the failure to pay" such benefits when due.  Id. at 115.  That concern extended to "vacation benefit funds, analogous to other welfare benefits [listed in section 1002,] in which either the employee's right to a benefit is contingent upon some future occurrence or the employee bears a risk different from his ordinary employment risk."  Id. at 115-16.  Such funds were exposed to the possibility that the employee's expectation of the benefit "would be defeated through poor management" or wrongfully ignored altogether.  Id. at 115.  "Thus, for example, plans to pay employees severance benefits, which are payable only upon termination of employment," are considered benefit plans subject to ERISA -- they accumulate over time in a separately-managed fund, and are payable only

10

upon an uncertain event, namely, the employee's discharge.  <u>Id.</u> at 116.

On the other hand, ordinary vacation payments, paid like wages out of the employer's general assets, "present none of the risks that ERISA is intended to address."  <u>Id.</u> at 115-16. With such policies, the only contingency is the employee's having accumulated unused vacation time.  There is no separate fund to mismanage, and the danger of defeated expectations is not materially different from "the danger of defeated expectations of wages for services performed -- a danger Congress chose not to regulate in ERISA."  <u>Id.</u>

Superior's holiday pay policy appears to be of the latter, non-ERISA type.  <u>See</u> Surreply, Ex 3.  That is, it provides for payment of ordinary wages on five of the six most commonly observed holidays (omitting only New Year's Day), as though an employee had worked a shift even if he got the day off.  There is no evidence that the policy is funded by a separately administered fund, nor is there any reason to believe that the policy was contingent upon anything beyond the occurrence of a specified holiday during an employee's tenure. Consequently, the court concludes that Superior's holiday pay policy does not fall within ERISA's definition of an "employee benefit plan."

C.

In Count 1 of the complaint, Hatfield alleges that his "claim for and/or attempted receipt of workers' compensation benefits [necessitated by his injury on August 22, 2015, was] a significant factor in [Superior's] decision to discharge [Hatfield] from his employment." Compl. ¶ 20. Hatfield alleges that such conduct violates West Virginia Code section 23-5A-1, which states that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive [workers' compensation] benefits." Count 1, accordingly, is on its face a workers' compensation claim that arises under the West Virginia Workers' Compensation Act. As such, it is unremovable pursuant to 28 U.S.C. § 1445(c), which explicitly provides:

> A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

Id.; see also Jones v. C.J. Mahan Constr. Co., 393 F. Supp. 2d 390, 392 (S.D. W. Va. 2005) (Chambers, J.) ("[A] claim for retaliatory discharge made pursuant to W. Va. Code § 23-5A-1 is one that arises under the workers' compensation laws of West Virginia and is thus barred from removal to a federal court by 28 U.S.C. § 1445(c).") (citing Husk v. E.I. Du Pont de Nemours

12

and Co., 842 F. Supp. 895, 896 (S.D. W. Va. 1994)).

Consequently, Count 1 must be remanded.

Hatfield's remaining claims -- each arising under West
Virginia law -- are intimately related to his workers'
compensation claim. Hatfield alleges, in Count 2,
discriminatory discharge in violation of the West Virginia Human
Rights Act. See Compl. ¶¶ 24-28 (citing W. Va. Code § 5-11-9,
which prohibits discrimination "against an individual with
respect to . . . employment[] if the individual is able and
competent to perform the services required even if [he] is blind
or disabled[.]"). Specifically, Hatfield claims to have been
fired because of the injury he sustained on August 22, 2015.
Id. at ¶ 26. In Count 3, Hatfield again alleges retaliatory
discharge, also in violation of the Human Rights Act, namely,
"because he . . . opposed . . . practices or acts forbidden by"
the Act, presumably including the acts alleged in Counts 1 and
2. Id. ¶¶ 29-32 (citing W. Va. Code § 5-11-9). In Count 4,
Hatfield charges Superior with common law wrongful termination,
once more claiming that Superior terminated his employment due
solely to his injury. Id. at ¶¶ 29-32. In Count 5, Hatfield
charges Superior with intentional infliction of emotional
distress. Id. at ¶¶ 38-46. As noted above, Hatfield seeks
compensation for alleged "loss of wages, loss of earning

capacity, loss of ability to enjoy life, humiliation, embarrassment, annoyance, and inconvenience," id. at ¶ 15, including "income and benefits," id. at ¶¶ 22, 28, 32, 35.

In none of these claims does Hatfield appear to seek benefits due under an ERISA plan.  In any event, no such "plan" is shown to exist here.  Warner v. Ford Motor Co., 46 F.3d 531, 534 (6th Cir. 1995) (no preemption where state claims did not seek ERISA benefits, even if ERISA plan existed); Forbus v. Sears, Roebuck & Co., 30 F.3d 1402, 1406 (11th Cir. 1994) ("[P]laintiff's claims in this case center[ed] on Sears' alleged fraud concerning the elimination of the plaintiffs' jobs, not fraud concerning an ERISA plan or any other benefits package," and so ERISA had no preemptive effect.").  If anything, the references in the complaint to unspecified "benefits" refer to workers' compensation benefits -- a category expressly excluded from ERISA coverage or preemption.  See 28 U.S.C. § 1445(c); see also 29 U.S.C. § 1003(b)(3) (exempting benefit plans "maintained solely for the purpose of complying with . . . workmen's compensation laws").  In the absence of an ERISA plan, the state law claims in Counts 2 through 5 necessarily cannot be preempted by ERISA.  Consequently, these claims -- for which no other basis of federal jurisdiction has been offered -- are properly

14

remanded to state court along with the workers' compensation claim in Count 1.

### III. <u>Conclusion</u>

Superior has offered no evidence showing that this case involves an ERISA plan.  Given that the court must "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction," <u>Marshall</u>, 6 F.3d at 232 (<u>citing</u> <u>Finn</u>, 341 U.S. at 10), the court concludes that remand is required under 28 U.S.C. § 1447(c).

For the foregoing reasons, the court ORDERS as follows: (1) that plaintiff Joshua Hatfield's motion to strike, filed on December 7, 2015, be, and it hereby is, denied; (2) that defendant Superior's motion for sanctions, filed on December 8, 2015, be, and it hereby is, denied; and (3) that plaintiff Hatfield's motion to remand, filed on November 18, 2015, be, and it hereby is, granted.

The court further ORDERS that this civil action be, and it hereby is, remanded to the Circuit Court of Boone County, West Virginia.

The Clerk is directed to strike this matter from the docket of the court.  The Clerk is further directed to transmit copies of this memorandum opinion and order to all counsel of

record, including former counsel, Mr. Nathan Brown of Ferrell &
Brown, PLLC, as well as plaintiff Hatfield at the following
address, as provided by his counsel: P.O. Box 558, Interstate
Hwy., Wyoming, West Virginia 24839.

DATED: May 6, 2016

John T. Copenhaver, Jr.
United States District Judge